### MATHEWS and others *vs.* POULTNEY and SKINNER.

It has not been held to be the law of this state that a failure to attach, to a general assignment of property in trust for the benefit of creditors, a schedule of either property or debts, renders the assignment void. *Per* GOULD, J.

Nor has it been held that an assignee, by his bare, unauthorized act of selling on credit a part of the assigned property, will make void an assignment which was valid when made. *Per* GOULD, J.

The only intent that has any thing to do with the validity of an assignment is the intent of the assignor at the time of making it—the intent with which, or to carry out which, it was made.

Taking possession of the assigned property, an actual and continued change of the possession, and all analogous facts, are but facts, the absence of which shows or *tends* to show fraudulent intent in the making of the assignment. And the evidence as to such facts, like that which may be offered as to facts prior to, and immediately connected with, the making of the assignment, is left, for both its credibility and weight, to the tribunal (whether judge or jury) which tries the question of fact.

And though the court may set aside a finding of fact, if plainly against the weight of evidence, it will not go beyond that point, to interfere with decisions of fact, fairly deducible from conflicting testimony.

In an action to set aside an assignment made for the benefit of creditors, on the ground of fraud, the assignor may be permitted to testify as to his *actual intent* in executing the same.

THE plaintiffs in this action recovered three judgments against the defendant, Poultney, as follows ; July 18th, 1859, for $1309.12 ; August 15th, 1859, for $231.89 ; August 20th, 1859, for $416.05 ; and after the return of executions thereon unsatisfied, commenced this action to set aside an assignment from Poultney to the defendant Skinner, dated and executed on the 19th of May, 1859. The action was commenced on the 24th of August, 1859, and the defendants interposed answers on the 5th day of December, 1859. The place of trial having been changed from New York to the county of Columbia, the cause was heard at a special term on the 23d of January, 1860, before Justice HOGEBOOM, who found the following facts :

That the plaintiffs recovered the judgments against the defendant, William Poultney, jun., mentioned in the com-

plaint and supplemental complaint, and executions were issued thereon and returned unsatisfied, as alleged therein. That Poultney made a general assignment to the defendant, Rodolphus P. Skinner, of all his property, on the 19th of May, 1859, and Skinner, on the same day, executed an acceptance thereof. That the property so assigned consisted mainly of a store of goods, consisting of groceries, liquors and other goods, usually kept in a grocery store, and also of a large number of open accounts and bills receivable, amounting in value to the sum of about $19,100. That on the 14th day of May, 1859, five days before Poultney made said assignment, he purchased of the plaintiffs, on credit, goods to the amount of $383.43, the same being included in said judgments. At the time of making said purchase, and at the time of the assignment, two judgments, amounting to $600, were existing against the assignor, and under executions thereon, his stock of goods had been levied on by the sheriff, and at the time of making said purchase the assignor had been sued upon other notes amounting to over $1000, and when he made his assignment, other suits on notes amounting to over $1000 had been commenced against him. That at the time of the purchase of said goods Poultney had not conceived the idea of making an assignment, which was brought about by the failure of McArthur & Co., on whose paper he was an indorser to a large amount, which occurred on the 9th of May, 1859, but was not known to Poultney till the 16th, after his last purchase of the plaintiffs. Upon the execution of said assignment, the assignee went to the store of the assignor, announced the assignment in presence of the clerks and other persons then in the store, locked up the store, took the key, and also the key of the safe, and the next morning engaged the assignor, without wages, to make an inventory, make up the accounts, and assist in the disposal of the goods and the collection of the accounts, and to assist him engaged the same clerks that had previously been employed by the assignor. That the assignor thereupon, with

Mathews *v.* Poultney.

the aid of the clerks, but without the aid or presence of the assignee, made out an inventory. That thereupon, by the direction of the assignee, the assignor, with the aid of the clerks, proceeded to dispose of said goods at retail, and collected some of the accounts, and continued such sales till the service of the injunction in this action, in the month of September, 1859, during which time the assignee visited the store every few days, making inquiries and giving directions, and forbidding sales on credit. That from time to time, during said period, the assignor, by the consent and direction of the assignee, and with the funds of the assignment, purchased pure spirits or high wines in various quantities, generally about six barrels at a time, amounting in all to over $500, which were mixed with the liquors on hand at the time of the assignment, and they were rectified and reduced, to make them more saleable, and in that condition were mingled or blended with the original stock, and retailed and sold in the same manner as other goods or articles belonging to the assigned property at the time of the assignment. That said adulterating or mixing of the liquors was intended and had the effect to render the same saleable at a higher profit than would have been realized in their unmixed condition. All the funds received from sales and collections which, prior to the injunction, amounted, exclusive of the money paid for purchases, to the sum of $3500, were received and kept until required to be disbursed under the assignment by the assignee. All the funds disbursed as aforesaid, under said assignment, were paid on account of claims for which the father of the assignor was security or indorser, or in payment of judgments obtained against his said father on his notes lent to the assignor. Poultney continued in the store after the assignment, and was actively engaged in the business of the establishment. Although this is usually a circumstance of considerable suspicion, or is at least such as to justify a rigid inquiry into the motives for the act, both apparent and real, the justice did not regard the motive as improper, or the act un-

justifiable, in this instance. The assignor was intimately acquainted with the business, and the assignee was not. The assignor rendered his services *absolutely without compensation, and such was the express agreement of the parties;* and the justice was unable to discover any actual fraud perpetrated by the assignor in this position, and the justice was of the opinion that none was meditated by him, or by the assignee in conferring upon him the situation. The employment was gratuitous, and so far free from one of the chief objections on which the imputation of fraud in such cases usually rests. The assignor was allowed by the assignee to purchase on his own account, but not with the funds of the assignment, flour, eggs, butter, potatoes, beans, and other vegetables, and to sell them on his own account at the store formerly occupied by him. This was done only to a limited extent. Sales to a small amount were made on credit, although the assignor denied on oath all knowledge of the fact, and the assignee gave explicit instructions to the contrary, and did not know of the occurrence. Some of them were satisfactorily explained. The assignee expressly forbade them. There was no change made in the signs upon and about the store after the assignment, but the name of the assignor remained up conspicuously as before. The assignor, who was a householder having a family, did not deliver to the assignee any household furniture. The assignor had some household furniture, part of which he showed to the assignee, and part the assignee did not see. What was the amount or value of such furniture is not precisely proven, but it did not exceed in nature or amount what the assignor had a right to retain and hold as exempt property. There was no sufficient evidence to justify the conclusion that the whole property of the assignor had not been disclosed, or had not passed, so far as any of it had done, into the possession of the assignee. The selling goods on credit as aforesaid, so far as it was done, the lending of money in small sums to be repaid at a short date, and the application of goods to a limited extent for the use

Mathews *v.* Poultney.

of the family of the assignor, were without the knowledge or consent of the assignee, and to a considerable extent without the knowledge of the assignor. That the assignor was justly indebted at the time of the assignment to the parties preferred and named therein, and for the amounts for which they were preferred and named respectively. That the assignee, at the time of the assignment, had only a limited pecuniary responsibility, and little property except his law library and office furniture, which were not worth more than 500 to $1000. There was no evidence to impugn the personal integrity of the assignee, and he was not either proposed or accepted from fraudulent motives. That said assignment was made by the assignor in good faith and without any intent to delay, hinder or defraud his creditors or any of them. There was not so perfect a delivery of possession, or actual and continued change of possession, as the law ordinarily requires, to exempt such a transaction from every imputation or suspicion of fraud. The delivery of possession was not very marked or decided—the change of possession was not very complete. The same sign remained over the door, nearly the same persons were found transacting the business within the walls of the store, the assignor among the rest; the selling at retail and at private sale was continued, until the appointment of a receiver. Some additions were made to the stock of goods and mixed or blended with the original stock, and third parties, not cognizant of the facts would, judging by appearances, scarcely have inferred a change of ownership. There was some evidence of delivery of possession—the making of the assignment was announced—the store was locked up by the assignee—the operatives and clerks in the establishment were employed by him—he was there occasionally, perhaps frequently, in the establishment making inquiries, and giving some directions—he positively forbade all sales on credit, and announced to all who inquired that he was the proprietor and had control of the concern. The evidence being conflicting on the question of change of possession, on this question of fact the justice

came to the conclusion that in the first instance there was an actual delivery of possession, and thereafter a partial but not complete actual change of possession. That there was sufficient proof of presumptive fraud to call upon the defendants to establish by positive evidence, good faith, and the absence of an intent to defraud. That the assignment was executed in good faith, and without intention to defraud the creditors of Poultney. That the household furniture owned by said assignor at the time of the assignment was by law exempt from levy and sale under execution.

The following conclusions of law were arrived at by the justice : 1. That the assignment was not, *per se*, invalid. That although the generality of expression by which the father's claims were protected, might be a slight circumstance on the question of fraudulent intent, it was not an altogether unusual form of expression, and could not, of itself, vitiate the assignment. 2. That the representations of the assignor, of the 14th of May, 1859, alleged to have been false and fraudulent, were not important, perhaps not admissible, evidence of fraudulent intent, except so far as they tended to show that by them Poultney designed to bring the plaintiffs' property under the operation of a fraudulent assignment. On that question of fact the justice was not satisfied that Poultney had then conceived the idea of making an assignment. That the representation that he was not indebted to his *father*, if made, and if he did not otherwise misrepresent the amount of his actual indebtedness, was only important if the plaintiffs sought to have the father as security for him. The representation that he was in a good pecuniary condition, or in a better condition than he had been for a long time before, might, if false and fraudulent, have had great weight, in case the plaintiffs had sought to reclaim the goods, or brought replevin or trover for them. But they had not only not done so, but had affirmed the sale by suing and obtaining judgment for the price, and by prosecuting this action, founded upon the theory that, previous to the assignment,

the goods belonged to Poultney. 3. That the omission to return those goods to the plaintiffs, and the including them in the assignment, were not of themselves sufficient to invalidate the assignment, if in point of fact it was free from fraudulent intent. 4. That although the facts existed, as above stated, they were not conclusive on the question of fraud. They were, according to the degree in which the evidence established an omission to deliver the goods and to change the possession, presumptive evidence of fraud—more or less strong, according to the degree or amount of this evidence— and if the evidence were clear and decisive, then conclusive evidence of fraud, unless rebutted by proof of *good faith* and the *absence of a fraudulent intent.* (2 *R. S.* 136, § 5. *Griswold* v. *Sheldon*, 4 *Comst.* 581. *Stewart* v. *Slater*, 6 *Duer*, 83. *Hanford* v. *Artcher*, 4 *Hill*, 272.) 5. One of the most objectionable features in the proceedings of the parties was the appropriation of the property and funds of the assignment, to the amount of several hundreds of dollars, to the purchase of spirits and high wines, with a view to mixing them with liquors which were in the concern at the time of the assignment, and manufacturing domestic spirits for sale. That this appropriation of a fund held in trust for a specific purpose, could not, except in an extreme case, be regarded as justifiable—or otherwise than censurable. If the power had been conferred in the assignment itself, it would probably have rendered it void. (*Dunham* v. *Waterman*, 17 *N. Y. R.* 9.) But that it did not proceed from an impure motive, but was designed to expedite and facilitate the sale of the assigned property. That although such a proceeding could not be countenanced, yet instead of subverting the assignment itself and all the proceedings under it for that reason, it would be more appropriate to hold the assignee to a rigid accountability for the funds placed in his hands, and to subject him to the hazard of an application to remove him from his position. That *bad faith* could not be imputed to the assignee in allowing such use of the assigned funds, nor did

the facts justify the conclusion that such use of them was anticipated either by him or the assignor at the time of the assignment, so as to make such a proceeding react upon their motives at that date.   6. That the business of the assignment had been protracted to a period unnecessarily long. The law contemplates a speedy disposition of the property and an early termination of the trust.   (*Hart* v. *Crane*, 7 *Paige*, 37.)   But no precise period is fixed, or can be fixed by the law.   Each case must depend upon its own peculiar circumstances; and if there had been, in this case, any error upon this subject, it should be regarded as an error of judgment, and not one arising from a fraudulent motive.   7. That the preponderance of evidence was in favor of the validity of the assignment, and the good faith of the transaction, and the absence of an intent to defraud the creditors of the assignor. But that there were circumstances of suspicion amply sufficient to justify the institution of the suit.   In such cases it is a proper exercise of discretion in a court of equity, not to charge the plaintiffs with the costs of the action. (*Mackie* v. *Cairns*, 5 *Cowen*, 575.   *Cunningham* v. *Freeborn*, 11 *Wend.* 258. *Lupin* v. *Marie*, 2 *Paige*, 170.)   8. Judgment for the defendants was ordered, and that the plaintiffs' complaint be dismissed, but without costs to either of the parties as against the others.   The costs of the assignee to be charged upon the fund ; and the injunction and receiver to be continued until ten days after notice or a copy of the judgment as settled was served upon the plaintiffs' attorney, to enable the plaintiffs to appeal.

To these conclusions the plaintiffs excepted, and appealed from the judgment.

*J. E. Burrill*, for the appellants.

*J. C. Newkirk*, for the respondents.

Mathews *v.* Poultney.

*By the Court,* GOULD, J. It has certainly not been held to be the law of this state, that the failure to attach, to a general assignment, a schedule of either property or debts, makes the assignment void. And even the act of 1860, (*Sess. Laws* 1860, *p.* 594,) relative to such assignments, has no such provision; while it does provide for the making of both of such schedules *after* the making of the assignment.

Nor has it ever been held that an assignee, by his bare, unauthorized act of selling on credit a part of the assigned property, can make void an assignment which was valid when made. The only intent that has anything to do with the validity of an assignment, is the intent of the assignor at the time of making it; the intent with which, or to carry out which, it was made. (24 *Barb.* 105.)

Taking possession of the assigned property, an actual and continued change of the possession, and all analogous facts, are but facts, the absence of which shows or *tends* to show a fraudulent intent in the making of the assignment. And the evidence as to such facts, like that which may be offered as to facts prior to, and immediately connected with, the making of the assignment, is left, for both its credibility and its weight, to the tribunal (whether judge or jury) which tries the questions of fact. And while this court, on review, may, and should, set aside a finding of fact, if it be plainly against the weight of evidence; it certainly should not go beyond that point, to interfere with decisions of fact fairly deducible from conflicting testimony.

I conceive that the conclusions of fact, at which the judge arrived, in his decision of this case at the circuit, are fully covered by this principle; and do not see that we have a right, on those grounds, (as claimed by the plaintiffs,) to reverse his judgment.

There remains, of the plaintiff's case on the appeal, but the rulings as to admitting or rejecting evidence. And these rulings were mostly as to admitting proof of facts bearing on the question of fraudulent intent; or as to the direct proof,

by the party, of his actual intent; though a part of them were in mere reply to what the plaintiffs had proved. The assignor's testimony as to his *actual intent* was proper. (14 *N. Y. Rep.* 567.) Some stress was laid upon the objection to the evidence showing *why* the *amount* (preferred) of the debt to the assignor's father was not inserted in the assignment. If the fact, that that amount was not stated, was of any consequence, the proof was pertinent. If it was of no consequence, the testimony did no harm. And the same is true of several other objections. It is possible that the question whether the assignor's father was liable for the rent of the store, (as the lease may have been in writing,) was improperly admitted. But I see no possible harm to result therefrom to the plaintiff; and I do not think that a sufficient reason for reversing the judgment.

I think the judgment should be affirmed.

Judgment affirmed.

[ALBANY GENERAL TERM, September 3, 1860. *Gould, Hogeboom* and *Peckham,* Justices.]