F. A. GARDOM *et al.* v. B. W. WOODWARD *et al.*

CREDITOR — *Delaying or Defrauding — Competent Evidence.* Upon a question of fact as to whether a sale of personal property was made for the purpose of hindering, delaying and defrauding the creditors of the seller, it is competent for the seller as a witness to testify directly as to whether he in fact intended by the sale to hinder, delay or defraud his creditors.

*Error from Morris District Court.*

THE opinion states the facts.

*J. K. Owens,* and *John T. Bradley,* for plaintiffs in error.

*J. Jay Buck,* and *E. S. Bertram,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Morris county on February 17, 1888, by B. W. Woodward, F. A. Faxon and J. C. Horton, partners doing business under the firm-name of Woodward, Faxon & Co., against F. A. Gardom, to recover the sum of $794.25, on an account. At the same time an order of attachment was procured in the case upon the following grounds, as alleged in plaintiff's affidavit therefor, to wit:

"That said defendant is about to convert his property, or a part thereof, into money, for the purpose of placing it beyond the reach of his creditors, and has property and rights in action which he conceals; has assigned, and is about to dispose of his property, or a part thereof, with the intent to defraud, hinder and delay his creditors."

The order of attachment was levied upon certain personal property as the property of Gardom, valued by the appraisers at $1,650.36. On April 9, 1888, Gardom filed a motion to discharge the attachment upon the ground among others, that the grounds set forth in the plaintiffs' affidavit for the attachment were not true. On the same day John A. McQuistan, with leave of the court and under the provisions of chapter

137 of the Laws of 1877, (Gen. Stat. of 1889, ¶ 4123,) filed an interplea claiming that the personal property attached belonged to him. The plaintiffs replied to this interplea. On April 23, 1888, by consent of the parties and the court, a trial was had before the court without a jury upon both the motion and the interplea upon the same evidence. The decision of the court below was in favor of the plaintiffs and against Gardom and McQuistan, and they, as plaintiffs in error, bring the case to this court for review.

It appears that the attached property once belonged to the defendant, Gardom, but that prior to the levying of the attachment, and on January 5, 1888, McQuistan purchased the same from Gardom for the sum of $1,234.45, that amount being the amount of a promissory note, with interest, which McQuistan at the time held against Gardom. The plaintiffs claim that this sale was a sham, made for the purpose of hindering, delaying and defrauding the creditors of Gardom; but Gardom and McQuistan claim that the sale was made in the best of faith. Whether the sale was a sham or not, or whether it was made in good faith, was about the only material question presented to the court below for its determination. If it was a sham sale, then, as to the plaintiffs, the property belonged to Gardom, and the plaintiffs were entitled to their attachment; but if it was an honest and *bona fide* sale, then the property belonged to McQuistan, and the plaintiffs were not entitled to their attachment. During the trial the defendant Gardom was examined as a witness on the part of himself and McQuistan, and he was asked the following, among other questions:

"I wish to ask you about these matters: there are three charges against you — one is that you were about to convert your property, or a part thereof, into money for the purpose of placing it beyond the reach of your creditors. I wish you to state to the court whether or not you were about, at the time of the attachment — at, or before, or about that time — if you were about to convert your property, or a part thereof, into money for the purpose of placing it beyond the reach of your creditors?"

The plaintiffs objected to the question upon the ground that it was "incompetent, irrelevant, and immaterial, and called for a legal conclusion"; and the court below sustained the objection, to which Gardom and McQuistan excepted. The witness was also asked the following question, to wit:

"He charges you with having assigned your property, or a part thereof, with the intent to hinder, defraud, and delay your creditors. Is that true — did you have any such intent?"

To which the plaintiffs objected as "incompetent, and as involving a question of law," which objection was sustained by the court, and the ruling duly excepted to.

It will be perceived that these questions were not objected to on the ground of their form, or that they were leading, but upon the grounds in substance that the evidence to be elicited by them would be incompetent, irrelevant and immaterial, a legal conclusion and a question of law. We think the court below committed error. A vital question involved in the case was whether the aforesaid sale was made in good faith, or was a mere sham, and made for the purpose of hindering, delaying and defrauding Gardom's creditors. Whether the sale was in good faith or not depended upon the state or condition of Gardom and McQuistan's minds, their thoughts, intentions, motives; and the aforesaid questions were asked for the purpose of eliciting evidence tending to show what the condition of Gardom's mind, in particular, was — his intentions and motives. Dr. Wharton, in his work on the Law of Evidence, (§ 508,) uses the following language:

"A witness, also, is not to be permitted to testify as to the motives by which another person is or has been actuated. Motives are eminently inferences from conduct. The facts from which the inferences are to be drawn are to be detailed by the witnesses; for the jury the work of inference is to be reserved. Yet where a party is examined as to his own conduct, he may be asked as to his motives, his testimony to such motive being based, not on inference, but on consciousness."

See also Whart. Ev., §§ 482, 955. In an article in the Al-

bany Law Journal, of December, 1876, the following, among
other language, is used :

"Upon the review of all the cases, it would appear that in
cases arising under a statute where the statute makes the in-
tent of the one doing an act involved in the issue essential, it
is competent to inquire of him as a witness, what his intent
was, and his testimony goes to the jury with the other evi-
dence contradicting or corroborating it." (14 Alb. L. J. 387.)

In the case of *Commonwealth v. Woodward*, 102 Mass. 155,
161, the following language is used :

"The criminal purpose or intent must always be proved.
It is usually inferred from the character and circumstances of
the offense, or proved by preceding threats, accompanying
declarations, or subsequent conduct or admissions. Now that
the defendant himself is admitted as a witness, it must be
competent for him to testify directly to that which is always
a subject of proof or disproof by indirect evidence."

In the case of *Seymour v. Wilson*, 14 N. Y. 567, the follow-
ing is decided :

"On an issue of fact as to whether an assignment or trans-
fer of property was made to hinder, delay or defraud credit-
ors, it is competent, where the assignor is a witness, to inquire
of him whether, in making the assignment or transfer, he in-
tended to delay or defraud his creditors."

See also the following additional authorities: *Wheelden v.
Wilson*, 44 Me. 11; *Snow v. Paine*, 114 Mass. 520; *Fisk v.
Inhabitants of Chester*, 8 Gray, 506; *Lombard v. Oliver*, 7
Allen, 155; *Persse v. Willett*, 1 Rob. N. Y. 131; *Mathews v.
Poultney*, 33 Barb. 127; *Pope v. Hart*, 35 id. 630; *Bedell v.
Chase*, 34 N. Y. 386; *Thurston v. Cornell*, 38 id. 281, 287,
and cases there cited; *Thorne v. Helmer*, 2 Keyes, (N. Y.) 27;
*Courtland Co. v. Herkimer Co.*, 44 N. Y. 22; *Kerrains v. The
People*, 60 id. 221; *The People v. Pease*, 27 id. 45; *Norris v.
Morrill*, 40 N. H. 395; *Hale v. Taylor*, 45 id. 405; *Delano
v. Goodwin*, 48 id. 203. The condition of a man's mind with
reference to what he thinks, feels, believes, intends, and his
motives, is always a fact, and it is a fact which is often re-
quired to be ascertained both in civil and in criminal cases;

and only one person in the world has any actual knowledge concerning that fact, and that person is the one whose condition of mind is in question; and where he is a competent witness to prove such condition, he may testify to the same directly. Other witnesses can testify only to extraneous facts tending to prove this condition. He may also testify to such extraneous facts, but he may testify directly as to what the condition of his own mind is or was at any particular time, or on any particular occasion. The court below held otherwise. The court below held that such direct testimony of the witness himself as to the condition of his own mind was worthless. If this testimony of the witness had been admitted, the finding of the court below might perhaps have been different from what it was. Indeed, it is probable that the finding of the court below without this testimony is erroneous at least as to McQuistan.

The order and judgment of the court below will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.