J. H. C. Bowers, *Appellee,* v. The Atchison, Topeka & Santa Fe Railway Company, *Appellant.*

No. 16,396.

SYLLABUS BY THE COURT.

1. Evidence—*Testimony by a Witness as to His State of Mind.* Where the motive, intent or belief of a person is a material fact to be ascertained, and he is a competent witness to prove such condition, he may testify to it directly in connection with his testimony detailing the circumstances and situation in which he was acting at the time.

2. Railroads—*Rules for Employees—Reasonableness—"Know" Defined.* A rule of the railway company required a brakeman who had given a signal to the engineer to know that such signal had been seen, understood and obeyed before placing himself in a dangerous position. It is *held,* that this rule is reasonable and should be obeyed. It is further *held,* that the word "know," as used in this rule, has the sense in which it is ordinarily understood. It does not necessarily import absolute knowledge of a fact which actually exists, but it means the full assurance and belief to the exclusion of doubt or uncertainty of a reasonable and prudent man based upon convincing evidence addressed to his intelligence or senses.

3. Personal Injuries—*Consistency of Findings—Evidence and Findings.* The contentions that certain findings are inconsistent, that they do not support the verdict, and are not sustained by the evidence, are considered and held untenable.

Appeal from Sumner district court; CARROLL L. SWARTS, judge. Opinion filed March 12, 1910. Affirmed.

## STATEMENT.

THE appellee recovered a judgment against the railway company for injuries received at Harper, while in the employ of the company as a brakeman. From his evidence it appears that a freight train on which he was a brakeman ran between Medford and Hutchinson on a branch of the railway. At Harper this branch was connected by a "Y" with the Panhandle division, extending west from Wellington. When the plaintiff's train reached Harper it ran over the "Y" to the line of the Panhandle division and stopped in front of the depot, with the engine heading east. A short distance east of the depot the main street of the town crossed the track. The cars extended across the street and for some distance to the east, and it became necessary to divide the train at the crossing. The conductor directed the plaintiff to cut the train for this purpose. The plaintiff stepped in between the cars from the south, or right hand, side of the train and uncoupled the air hose. Having done this he stepped out on the same side from between the cars, grasped the lever operating the pin in the automatic coupler, and endeavored to pull it, but was unable to do so because of the tension in the couplers which bound the pin and prevented its release. He thereupon signaled the engineer for slack to relieve the tension. He gave this signal with his right hand, while holding to the lever with his left hand. The engineer backed the engine sufficiently to give the necessary slack, the plaintiff immediately pulled the pin, and the uncoupling was accomplished, leaving three or four cars west of the crossing. He then gave the engineer a signal to go forward and clear the crossing. In order to do this it was necessary for the forward part of the train to move east-

ward about the length of two cars—sixty or seventy feet. In obedience to this second signal, the forward portion of the train, consisting of fifteen or sixteen cars and the engine, moved eastward a distance of ten or twelve feet from the rear portion. The plaintiff watched it until it had moved that far, and, believing that the engineer had seen and understood his last signal, and was obeying it by pulling the forward portion of the train across the street, he stepped in between the two sections of the train to turn the angle cock on the air hose of the standing cars, in order to set the brakes on those cars and prevent them from running eastward of their own weight, as there was a down grade toward the east at that point. While performing this act, with his back toward the engine, the forward part of the train backed up and caught him between the bumpers and between the knuckles of the couplings, crushing his arm between the elbow and the shoulder. He had pulled the angle cock with his right hand and was holding the hose with his left knee. His face was turned to the west. While doing this work the movement of the engine and train was under the control of the plaintiff, the engineer being subject to his orders for the time being. The plaintiff had knowledge of the following rules, in effect at the time:

"Rule 313. It is alike dangerous to assume that signals given to the engineman or fireman have been seen, and if seen will be obeyed, when obedience to those signals on the part of the engineman or fireman is essential to the safety of an employee in the performance of his duty. He must know that the signal has been seen, understood and obeyed, before placing himself in a dangerous position; otherwise, without such knowledge, he assumes all risk of danger arising from any misunderstanding or disregard of signals.

"To enter or remain in the service is an assurance of willingness to obey the rules. Obedience to the rules is essential to the safety of passengers and employees and to the protection of property."

7—82 KAN.

In making application for employment the plaintiff answered "Yes" to the following question:

"Do you understand that any employee of this company whose duties are in any way prescribed by the rules must always have a copy of the rules at hand when on duty and must be conversant with every rule, and that you must render all assistance in your power in carrying them out and immediately report any infringement of them to the head of your department, and do you agree that such rules, including any changes therein or additions thereto from time to time, shall be a part of your contract of employment?"

A demurrer to the evidence, interposed by the defendant, was overruled, the defendant excepting.

The engineer testified that he received the signal for slack and in obeying it he only succeeded in moving the train back a little, when he received from the plaintiff a second signal for slack; that he then moved forward a little to get initial velocity to permit moving the train back, and then pushed the train back; that he supposed the first movement backward was not far enough to relieve the tension sufficiently to loosen the pin; that it was necessary to go forward and then back to accomplish this purpose; that in doing so he was obeying the plaintiff's second signal, and that he did not receive any signal to go forward.

It was shown that sometimes an engine is unable to move a heavy train upgrade at the first effort, and, when the engine is so unable to move a train, in order to make a second effort it goes the other way to get slack, in the manner testified to by the engineer. It was necessary to turn the angle cocks to hold the cars which had been cut off from moving forward of their own weight. Some rain had fallen, and there was some mist in the air. The petition alleges that the injury was caused:

"By the negligence of the engineer . . . in negligently and carelessly moving the front section of said train backward without a signal therefor when he

Bowers v. Railway Co.

knew or might have known, and ought to have known, that the plaintiff was on the track between the two sections of said train."

Over the objections of the defendant the plaintiff was allowed to testify that after signaling the engineer to go ahead, and before going between the cars, he satisfied himself that the engineer was moving the train off the crossing.

Instructions were asked to the effect (1) that although the plaintiff may have believed in good faith that the engineer had seen and understood the signal to go forward after the cars had been uncoupled, yet if without waiting for such signal to be obeyed he went in or remained in between the cars, and was injured because of the failure of the engineer to obey the signal, there could be no recovery; (2) that the plaintiff was not authorized to go between the cars until he knew that the signal to go forward had been obeyed; (3) that the mere fact (if it be a fact) that the plaintiff believed in good faith, while acting with reasonable prudence, that the engineer had seen, understood and obeyed a signal to go ahead would not avail if he was mistaken in this belief, however well founded his belief may have been.

In answer to special questions the jury found, in substance, that the engineer did not exercise proper care in moving his engine, nor to ascertain whether it was safe for him to move his train backward as he did; that after moving forward it was not proper to move backward without waiting for a signal from the plaintiff and without ascertaining whether he was in a place of safety; that the plaintiff was justified in believing and acting on the belief that the engineer had seen, understood and obeyed the signal to go forward; that the plaintiff gave the signal to back up so that he might pull the pin and uncouple the train; that after the engineer made the first effort to back he started his

engine forward to take slack so that he could more effectively back the train; that when he pulled ahead to do this he was under the impression that the train had not parted, and that it was necessary to go forward to get slack to go backward; that in doing this he did not honestly believe that he was obeying the signal to back up; that he did not honestly believe that his acts in first attempting to back the train, then in going forward to take slack and again attempting to go backward, were acts necessary to be performed to obey the plaintiff's signal; that the engineer could not see that the cars were parted by looking from his position just prior to reversing the engine and backing it, and after the plaintiff had uncoupled the cars the engineer did not learn that they were uncoupled before moving his train back; that when the train separated the plaintiff did not wait to see whether it would move forward far enough to clear the crossing before he went in between the cars to adjust the air; that it was necessary for him to act in a hurry in going between the cars to turn the angle cocks, and that in doing so he obeyed rule 313, but that he gave no signal that he was about to go between the cars; that after the plaintiff had uncoupled the cars the engineer observed and understood a signal from the plaintiff directing him to move ahead, and he saw the plaintiff's arm and part of his body when giving the signal; that, according to the regulations, if the engineer had failed in the first attempt to back his train in response to a signal to do so he should have waited for another signal; that it was not necessary in this case to take slack by moving forward and then reversing the engine for backing; and that after the train had moved forward ten or twelve feet, and the plaintiff stepped in to turn the angle cock, he did not notice or give attention to the cars in front of him.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellant.

*W. W. Schwinn,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: The errors assigned relate to the admission of testimony, the instructions given and refused, the inconsistency of the findings, and the sufficiency of the evidence.

After describing the situation, and stating that the section of the train then moving forward had proceeded far enough to leave a space of ten or twelve feet upon the crossing between the front of the standing cars and the rear end of the last car moving to the east, the plaintiff was allowed to testify that he had satisfied himself that the section in front was moving off the crossing; that is, in connection with the circumstances detailed he was permitted to testify to his belief of a fact—to explain why he then stepped into this space to adjust the air brakes. In a situation like that in which the plaintiff was placed testimony of belief is proper.

"The condition of a man's mind with reference to what he thinks, feels, believes, intends, and his motives, is always a fact, and it is a fact which is often required to be ascertained both in civil and in criminal cases; and only one person in the world has any actual knowledge concerning that fact, and that person is the one whose condition of mind is in question; and where he is a competent witness to prove such condition he may testify to the same directly. Other witnesses can testify only to extraneous facts tending to prove this condition. He may also testify to such extraneous facts, but he may testify directly as to what the condition of his own mind is or was at any particular time, or on any particular occasion." (*Cardom v. Woodward,* 44 Kan. 758, 761.)

This rule is supported by a note following the report of the above case in 21 Am. St. Rep. 314. The argu-

ment to the contrary is generally repudiated. (3 Wig. Ev. § 1965.)

The instructions requested were to the effect that the plaintiff's belief was immaterial; that under rule 313 he was bound to *know* that his signal had been understood and heeded, and bound to wait until the train was clear of the crossing before going into the space between the two sections of the train. Instead of the instructions requested the court gave the following:

"(17) Under the defendant's rule 313, which has been introduced before you in this case, it was the duty of the plaintiff, before placing himself in a dangerous position between the cars at the time in question, not only to know that his signal or signals, if any he gave to the engineman or fireman, had not only been seen and understood by such party or parties, but it was plaintiff's duty also to know that such signal had been obeyed; and even though plaintiff knew that any such signal given by him was seen and understood by the party to whom he gave the signal, yet, if without waiting to see and know that such signal would be obeyed, plaintiff went in between the cars at the time and place in question and received any of the injuries complained of, and such injuries were caused by reason of plaintiff's failure to wait and learn that such signal had been obeyed as well as seen and understood by the party to whom it was directed, then your verdict should be for the defendant.

"(18) The word 'know,' as used in rule 313, has the sense in which it is ordinarily understood. It does not necessarily import absolute knowledge of a fact which actually exists, but it means full assurance and belief to the exclusion of doubt or uncertainty of a reasonable and prudent man based upon convincing evidence addressed to his intelligence or senses.

If absolute certainty of the fact is required by the language of the rule, the instruction given was erroneous and the one requested should have been given. A brakeman in such a situation, sixteen car lengths from the engine, can not "know that the engineer has seen, understood and obeyed" his signal otherwise than by

Bowers v. Railway Co.

observing what the engineer does in response to it, and whether he acts in obedience to the rule in view of such observation is a question for the jury. Mr. Justice Strong, in *Shaw v. Railroad Co.*, 101 U. S. 557, said: "It may fairly be assumed that one who has reason to believe a fact exists, knows it exists. Certainly, if he be a reasonable being." (Page 566.)

It is possible that some further qualifications should be added to this definition in interpreting the rule in question, but it should not be construed so as to prevent action until absolute certainty beyond all possibility of mistake — if that is ever attainable — is reached. So to hold might delay operation, or prevent action when imperatively necessary, and lead to results more serious than those the rule was designed to prevent. Even in criminal prosecutions for receiving stolen property knowing it to have been stolen it is held, as stated in a case note in 22 L. R. A., n. s., 833, that "in no case has it been held that absolute knowledge must be shown in such prosecution, though it is frequently said that there must be more than a mere belief or supposition that the goods had been stolen." The appellant has no ground to complain of the interpretation of the rule given by the district court nor of the other instructions given.

It is contended that the findings that when the engineer moved forward to get slack he did not believe that he was obeying the plaintiff's signal, and that he did not honestly believe that such acts were necessary to obey the signal, are contrary to the undisputed evidence. It is true that they are contrary to the engineer's testimony, but the plaintiff testified that he gave but one signal for slack, and the jury found this to be true. The engineer could not honestly obey, or obey at all, a second signal which had not been given. But it is said that these findings are inconsistent with others wherein the jury stated that in going forward and then back the engineer could more effectually

back the train, and that he was then under the impression that the train had not parted and that this course was necessary. All this may have been true, as the jury found, and yet it may have been true, as the jury also found, that he did not do this in obedience to any signal. In other words, acting upon a mistaken assumption, he proceeded without signals to do the acts which injured the plaintiff. It was his duty to be governed by the signals. It is true he testified that he received a signal, which, had it been given, would have authorized the act; but the jury have said that such a signal was not given, therefore it could not have been received, and this finding, approved by the district court, determines the fact.

It is contended that the evidence does not support the allegation that the engineer knew or ought to have known that the plaintiff was between the cars when he moved the train backward. The engineer knew that the purpose of this movement was to release the pin that the cars might be uncoupled to open the train at the crossing. He knew that the duties of the brakeman required him to go between the cars. He testified: "If I had looked and noticed Johnnie Bowers was out of sight I would have concluded that he was between the cars." That was the place he would naturally expect him to be after the train moved forward sufficiently to impart to the plaintiff knowledge that his signal had been obeyed. Upon all the evidence it can not be held that there was no testimony to support the material findings.

Some minor rulings were excepted to, but are not commented upon. No error is found in the proceedings. The judgment is affirmed.