No. 23,512.

THE STATE OF KANSAS, *Appellee*, v. J. E. CALONGNE, *Appellant*.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Sale of Oil Stock—False and Fraudulent Representations— Evidence of Intent.* In a criminal prosecution charging the making of false and fraudulent representations to the effect that an oil company was then actually paying its stockholders a dividend of 30 per cent per annum from production, the defendant offered evidence to show certain representations made to him to induce him to become interested in the oil company, and to become an agent for the sale of the stock. *Held,* it was error to sustain an objection to a question calling for a statement made to him concerning the amount of oil a certain well belonging to the company had produced. Where the material fact to be ascertained is the motive, intent or belief of a person, he may testify thereto directly in connection with his testimony showing the circumstances and facts which induced the intent or belief. (*Bowers v. Railway Co.,* 82 Kan. 95, 107 Pac. 777. See, *Gardom v. Woodward,* 44 Kan. 758, 25 Pac. 199, and cases cited in the opinion.)

2. SAME—*Evidence—Original Telegrams.* Whether the copy of a telegram filed with a telegraph company for transmission or the copy received at the point of destination is to be considered as the original, depends entirely upon circumstances. Where the defendant offered in evidence certain telegrams received by him which he claimed induced him to believe that an oil company's affairs were prospering, and that the company was engaged in a *bona fide* business, it was error to refuse to admit in evidence as originals the copies received by him in the regular course from the telegraph company, the real question being not whether they were sent by the person whose name appeared signed to them, but whether the appellant received them, and whether he believed they were genuine and contained statements upon which he could rely.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed May 6, 1922. Reversed.

*C. L. Kagey,* of Beloit, and *S. C. Bloss,* of Winfield, for the appellant.

*Richard J. Hopkins,* attorney-general, and *Ellis Fink,* county attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant was convicted upon two counts of an information charging that with the intent to cheat and defraud one Mary Broadbent he made to her false and fraudulent representations to the effect that the New Spring Creek Oil Company was then actually paying its stockholders dividends of 30 per cent per annum from production of oil and gas; that she, believing the representa-

tions and in reliance thereon, purchased shares of the corporate stock of the oil company and paid to one R. J. Bell and the appellant $1,000 therefor; that in truth and fact the company was not honestly engaged in the production of oil and gas; that it was a stock-selling scheme, and was not then paying *bona fide* dividends on its stock, and that the appellant well knew that the representations he had made were false and fraudulent.

1. The appellant was called as a witness in his own behalf, and testified that he was thirty-nine years of age. He related his business experience or lack of experience; he told of meeting R. J. Bell in 1916, who induced him to look at an oil proposition at Shamrock, Okla. He testified that Bell showed him oil wells with two pumps that were operating and pumping oil into tanks, and that Bell made a statement to him concerning what this property was producing; that he never had seen an oil well until Bell took him down there; that after the company was organized he went out and helped to sell the stock, and that Bell told him that the oil that they had gotten out of Spring Creek had been sold, and the property had already paid $16,000; that the money went to an Oklahoma bank to pay dividends. He further testified that Bell showed him at another time figures as to what two of the leases were doing and would do; that he believed the figures to be true and correct; that he received a paper from Bell when he went out to sell stock and relied upon the figures therein in making sales and believed Bell's statements with reference to it. The appellant was further questioned as follows:

"Q. Did he [Bell] make any statement to you at that time about what this property was producing, this Spring Creek property? A. He did, yes, sir.

"Q. Did he say anything to you about how much it had produced? A. Yes, sir."

To this the state objected for the reason that the evidence was immaterial and hearsay.

"By the Court: It is all immaterial."

Counsel for the appellant objected to the court's statement in the presence of the jury as prejudicial and stated further that the only way counsel could show the good faith of appellant was to prove the facts shown to him.

"By the Court: Is there any rule of law whereby a man can make a statement as a statement of fact that is wholly hearsay? What Mr. Bell told him about the proposition is outside of this case."

Following this colloquy the court did permit the appellant to testify to some of the statements Bell had made to him. But the inquiry was restricted considerably, and the comment by the court practically destroyed the effect of the testimony that had been admitted. The information charged that the appellant "did then and there unlawfully, feloniously, falsely and fraudulently, and with the intent to cheat and defraud" make certain representations and that at the time he made the statements he knew them to be false. The intent with which he made the statements being the principal issue of fact, we think he had the right to show that he believed the statements he was charged with making to be true, and the facts upon which his belief was founded. In order to constitute the crime of making false pretenses, the intent must be established by proof. The rule is well stated in *Bowers v. Railway Co.*, 82 Kan. 95, 107 Pac. 777, where it was held:

"Where the motive, intent or belief of a person is a material fact to be ascertained, and he is a competent witness to prove such condition, he may testify to it directly in connection with his testimony detailing the circumstances and situation in which he was acting at the time." (Syl. ¶ 1.)

See, also, *Gardom v. Woodward*, 44 Kan. 758, 25 Pac. 199, where it was held that—

"Upon a question of fact as to whether a sale of personal property was made for the purpose of hindering, delaying and defrauding the creditors of the seller, it is competent for the seller as a witness to testify directly as to whether he in fact intended by the sale to hinder, delay or defraud his creditors." (Syl.)

The comment of the court with respect to the character of the testimony was improper. The testimony was not hearsay although it involved statements made to the witness by another person.

2. The appellant was asked whether he had received any telegrams from Bell at different times about what the company was doing; he answered that he had. Several telegrams were offered in evidence and the appellant testified that he received them on the respective dates from the Western Union Telegraph Company and believed that they were telegrams from the party whose name was signed to them. Upon the state's objection the court held the telegrams were incompetent. The court then made the statement that he was informed there was within the county the party who was claimed to have sent the telegrams and that he could be had in the court room within an hour, and that until the telegrams were better

The State v. Calongne.

identified the objection to their introduction would be sustained. Appellant's counsel stated that they had been informed that R. J. Bell, who was not present, was in the county jail under conviction in a case recently tried in the same court; that they were further informed and believed that he was a witness hostile to the appellant, and they did not wish to put him on the stand or vouch for anything to which he would testify. Upon the refusal of appellant to send for Bell, the court sustained an objection to the introduction of the telegrams.

The seventeen telegrams offered in evidence are set forth in the abstract. Some of them appear to contain statements which would naturally tend to sustain appellant's contention respecting his good faith in making the representations as to the company being a *bona fide* and prosperous oil company. The court appears to have held that the copies delivered to the appellant were not the originals. In order to determine which is to be considered the original—the copy filed with the telegraph company for transmission or the copy received at the point of destination—the circumstances must be considered; the purpose of the evidence, the real issue sought to be established. Of course, in a controversy between the sender and the telegraph company involving delay in transmission, the copy filed for transmission would be the original. In a controversy arising between the receiver of the telegram and the telegraph company, it is plain that the copy delivered at destination would be the original. Doubtless cases arise where both are considered originals. In case of an action against the telegraph company for a mistake in transmission, the copy filed by the sender would be an original copy, and if the copy received contained a mistake it would be also an original. The rule is stated in 10 R. C. L. 910:

"The question whether a message as left with a telegraph company for transmission to another point, or the message as delivered at its destination, is to be considered the original when it is desired to use either as evidence, depends entirely upon circumstances. It is the general rule that if the person sending the telegram takes the initiative and the telegraph company is considered to be his agent, the telegram as delivered at the end of the line is the original, especially if there is no dispute as to the contents of the telegram."

(And see, Note, 8 Ann. Cas. 270.)

In the present case the appellant was seeking to show the receipt of certain telegrams which purported to have been sent by Bell and which appellant claims induced him to believe that the oil

company's affairs were prospering and that the company was engaged in a *bona fide* business. The real question was not whether Bell sent these telegrams, but whether the appellant received them in the usual and customary way in which telegrams are received from the Western Union Telegraph Company, and whether he believed they were sent by Bell, and that they contained truthful statements upon which he could rely. For this purpose the telegrams, as received, were the originals. If the state contended that they were not in fact sent by Bell or that the appellant did not believe they were sent in good faith, the state should have offered evidence to establish these facts. It was error to exclude the evidence on the ground that the telegrams themselves were secondary and that before they could be introduced it was necessary to send to the jail for the man whose name appeared as the sender.

Other questions are argued in the briefs, but as there is nothing to indicate that they will arise on a second trial of the case they require no comment.

The judgment is reversed and a new trial ordered.