## BOGILENO v. UNITED STATES.
### No. 113.

Circuit Court of Appeals, Tenth Circuit.
Feb. 5, 1930.

William T. Burris, of Pueblo, Colo., for appellant.

Charles E. Works, Asst. U. S. Atty., of Denver, Colo. (Ralph L. Carr, U. S. Atty., of Antonito, Colo., on the brief), for the United States.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge.

Appellant was convicted on two counts of an indictment and sentenced to imprisonment for three years, and fined on the first count and to imprisonment for three years on the second count. He contends that the offenses charged are defined by section 241, title 18, U. S. Code (18 USCA § 241), which fixes the maximum imprisonment at one year; rather than by section 91, which fixes the maximum at three years. He also claims that section 241 is a special statute, that section 91 is a general statute and that a general statute cannot be resorted to where there is a special statute covering the case. Stoneberg v. Morgan (C. C. A.) 246 F. 98; Snitkin v. United States (C. C. A.) 265 F. 489; McClintic v. United States (C. C. A.) 283 F. 781; Jackson v. Cravens (C. C. A.) 238 F. 117. So far as relevant to this case section 91 is in these words:

"Whoever shall * * * give * * * any money * * * to any officer of the United States, or to any person acting for or on behalf of the United States in any official function, under or by authority of any department or office of the Government thereof, * * * with intent * * * to induce him to do or omit to do any act in violation of his lawful duty, shall be fined" etc.

The part of section 241 on which appellant relies to support his contention reads thus:

"Whoever corruptly * * * shall endeavor to influence * * * any witness, in any court of the United States or before any United States commissioner * * * or [shall] endeavor to influence, obstruct, or impede, the due administration of justice therein, shall be fined" etc.

The first numbered section is directed against the use of money or any valuable thing to influence an officer of the United States, or one acting on behalf of the United States in any official function, to do or omit to do any act in violation of his official duty. The last numbered section is directed against a corrupt endeavor to influence any witness in any court of the United States, or before any United States commissioner, or to corruptly endeavor to influence, obstruct or impede the due administration of justice therein. A consideration of the charge in each count leads us to the conclusion that it states the offense defined by section 91, and not the offense defined by section 241; and therefore the contention is not sound. In fact, it is our view that as between the two sections, 241 is a general act. It covers the corrupting of any witness in any United States court or before any United States commissioner in any cause, and all manner of obstruction of justice in any of those tribunals; whereas section 91 is a special statute covering only the unlawful use of a valuable consideration to influence any officer of the United States or anyone discharging official functions for the government, to act contrary to his legal duty. Each count states that on May 16, 1927, one Lukens and one Bowman were acting for and on behalf of the United States in an official function, as prohibition agents, under and by virtue of the authority of the Treasury Department of the United States government, appointed by the Commissioner of Internal Revenue, and that while so acting, and pursuant to their lawful duty, they arrested and detained appellant for violation of the Act of Congress known as the National Prohibition Act. That on said day they caused a complaint to be filed before a named United States commissioner at Durango, Colorado, charging appellant with the possession of intoxicating liquor, to wit, whisky, in violation of said National Prohibition Law (27 USCA). The first count then charges that appellant, unlawfully and knowingly gave to said Lukens and Bowman on said day, while they were acting for and on behalf of the United States in said official function, $400 for the purpose of influencing and causing them to release appellant and to refrain from appearing against him in the said proceeding then pending against appellant before said United States commissioner. And the second count charges that on said day appellant unlawfully and knowingly gave to said Lukens and Bowman, while acting for and on behalf of the United States in said official function, $400 with intent to induce them to omit to appear as witnesses and produce evidence of violation of said National Prohibition Law in the cause then pending against appellant before said United States commissioner.

Appellant further correctly contends that a necessary element of the offense defined by section 91 is knowledge on the part

of one attempting to unlawfully influence an officer that he is such officer, and he claims there is no charge in either count that appellant knew at the time he gave the two prohibition agents the $400 that they were officers or acting in the discharge of official functions. It is true that there is no direct charge of that sort, but it will be observed from what has been said that each count charged that appellant knowingly gave $400 to said Lukens and Bowman, "while acting for and on behalf of the United States in the official function as hereinbefore in this indictment related, * * * with intent on the part of the said Caesar Bogileno then and there to influence the actions of the said Lukens and Bowman as said prohibition agents." This, we think, is the equivalent to a charge that appellant knew at the time he gave them the $400 that they were officers or acting in an official function for the United States.

■ It is also argued the court erred in refusing to instruct in favor of appellant at the close of all the testimony. This requires a consideration of the evidence. Lukens made written complaint, under oath before the United States commissioner on May 16, 1927, charging appellant with unlawful possession of whisky, and each count of the indictment charges that the $400 was given to Lukens and Bowman on that day and that the cause and proceeding was then pending against appellant before the United States commissioner. Immediately on the charge being made by Lukens before the commissioner, Lukens and Bowman went to the jail in Durango where appellant was held and brought him before the commissioner for arraignment. The $400 was given to them by appellant as they were going from the jail to the commissioner's office. The testimony as to that occurrence is very brief, and is this: Lukens testified that on the way from the jail to the commissioner's office the defendant said: "I have got that $200 now. What do you say?" As he said that he reached in his pocket and pulled out two rolls of bills and handed one to witness and one to Bowman. Witness then told defendant he would be charged with bribery. Bowman testified: On the way to the commissioner's office the defendant said: "I have got that money now." And Lukens said: "Where is it?" He said, "Here," and defendant took two packages and handed one to Lukens and one to witness; then Lukens told him he was going to charge him with bribery. There was $400 in the two packages. Defendant testified he gave $400 to

Lukens and Bowman, he knew they were prohibition agents the night they took him into custody; "I gave them the money to have them arrested." It may be conceded this evidence falls far short of proving, or tending to prove the intent with which appellant gave the $400 to Lukens and Bowman, as charged in the indictment. But what was said by appellant the preceding night, when Lukens and Bowman took him to jail, is explanatory of appellant's purpose in giving the money to Lukens and Bowman. On the evening or night of May 15 they discovered a keg of whisky in a garage back of the rooming house of Mrs. Janeto. Appellant and others roomed there. Appellant's Ford truck, in which he carried working tools, was in the alley near the garage. He did not own the garage and rarely used it. He saw a man out there with a flashlight. He thought it might be some boys looking around to take something. He went out. Lukens and Bowman were there. He asked: "What right have you got to look around this car?" And they said they were federal prohibition agents and he was under arrest. He said: "I never do anything to be arrested." Then one of them pulled a gun out and he "got down dizzy." They took him to jail. They asked him about some money, how much he had in his pocket. He said he had none in his pocket, if he could go back home he would try to get some. Lukens testified he had trouble arresting defendant, that he told him three times he was under arrest for violating the prohibition laws, defendant ran over to his Ford truck and tried to crank it. Then he took defendant by the shoulder and pulled him back. Defendant resisted, started striking at Bowman, and Lukens hit him with a gun. Lukens further testified that on the way to jail defendant said: "We can settle this between us here and nobody will ever know anything about it, I am a poor working boy like you are." Lukens asked him what he meant and defendant said: "Well, I will pay you some money, I will pay you $200 apiece." Lukens said that was not enough, and defendant said he would make it $600, and Lukens told him, "Nothing doing." Bowman testified substantially as did Lukens as to what occurred on that occasion. Neither Lukens nor Bowman had seen defendant in the garage, nor his car in the garage, nor that he had possession of the keg of whisky in the garage, nor possession of any other whisky, nor did they know, nor does the record show, to whom the keg of whisky belonged. It would therefore seem they had

no right or authority to arrest appellant on that occasion, and that they took him into custody by force unlawfully. Nevertheless, the statements that they attribute to appellant on that occasion are explanatory of his conduct in giving Lukens and Bowman the $400 next morning. Appellant testified that he did not talk to Lukens and Bowman until they asked him about how much money he had on the evening of May 15, that he did not then say he wanted to fix the case and did not offer them any money to fix the case. He admitted he gave them the $400 on the morning of May 16. In the light of all this testimony we think the court did not err in refusing to direct a verdict for appellant.

■■ Although there were no objections or exceptions made and saved to the court's instructions to the jury, error has been assigned to parts of that charge. We recognize the general rule that a complaining party must call the attention of the court to any claimed error in the trial proceedings at the time it occurs, and if he fails to do so an appellate court will not, usually, consider such claims, although the errors complained of are clearly prejudicial. This appellant was sentenced to confinement in the penitentiary for a term of three years; and where the liberty of the one complaining is at stake and the court has clearly misdirected the jury in the discharge of its functions, the rule will not be followed but the claimed error will be considered, notwithstanding the charge was not excepted to at the time. In Lamento v. United States (C. C. A.) 4 F. (2d) 901, 904, the court said:

"But there is an exception to this rule as well established, as just and equitable, as the rule itself. It is that in criminal cases, involving the life or liberty of the accused, the appellate courts of the United States may notice and correct, in the interest of a just enforcement of the law, serious errors in the trial of their cases, fatal to the defendant's rights, although these errors were not challenged or reserved by objections, exceptions, or assignments of error."

■ This exception to the general rule was also applied in Van Gorder v. United States (C. C. A.) 21 F. (2d) 939. The court said to the jury that defendant had admitted that he gave the $400 to Lukens and Bowman, but that he said he did it, not with the intent to bribe them but in order that he might have them arrested. The jury was also instructed that intent was a necessary element of the crime charged and that the real question was whether he really intended to influence the action of the agents, that the crime consisted of two elements, the giving of money and the intent accompanying it to procure the officer to do or fail to do any act in violation of his official duty. So far, the charge was obviously proper; but the court also used this language in its instructions:

"The question is that this defendant, having been arrested and in the custody of the government—whether he offered this bribe to induce them to drop the charges or not to appear as witnesses against him. The evidence on that point is that he gave the officers, after a discussion with them, $400. He admits he gave them money. He admits he gave it for that purpose, so there can hardly be a dispute about that fact."

And then later the court again said:

"In this case as I see it there is very little dispute in the evidence. He admits he gave the money, and gave the money for the purpose of bribery."

The instructions were brief, covering less than two pages, and we cannot believe that these two excerpts failed to impress the jury. In substance, they seem to us to be equivalent to an instruction to find the defendant guilty, which is beyond the right and authority of the court to do. It was the exclusive duty of the jury to determine whether he gave the $400 to induce the agents to drop the charges or not to appear as witnesses against him. He did not admit that he gave it for that purpose, or for the purpose of bribery. He testified that he gave it for another purpose. The purpose he assigned may have impressed the court as unreasonable and even unbelievable, but the court could not pass upon that. It was a question for the jury. The question of his intent was an issue of fact, and not of law, for the jury's determination. The conclusion that the excerpts were prejudicial to the defendant cannot be escaped.

We seriously doubt whether there was any evidence in support of the charge in the second count. There is no testimony that in either conversation—night of May 15 or morning of May 16—was anything said by agents or defendant, even remotely or suggestively, that the $400 was given to induce them to omit to appear as witnesses and produce evidence at the trial. We can surmise that to have been his intent, but to reach that conclusion from the testimony seems to be a mere conjecture. But we do not think it can be said that the verdict on the first count was without support in the proof.

The appellant was in custody. The natural impulse was to obtain release from that custody, and so the first count charged that the money was given with the intent of causing the agents to release him. He testified that he did not know anything about the liquor in the garage, did not know he was being arrested for that.

Reversed and remanded for trial de novo.