**KING v. UNITED STATES.**
No. 474.

Circuit Court of Appeals, Tenth Circuit.
Jan. 21, 1932.

Mahlon E. Wilson and Robert C. Wilson, both of Salt Lake City, Utah, for appellant.

C. R. Hollingsworth, U. S. Atty., Geo. H. Lunt, Asst. U. S. Atty., and Edgar C. Jensen, Asst. U. S. Atty., all of Salt Lake City, Utah, for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.

Appellant challenges a conviction under an indictment which charged that he did on October 2, 1930, at Preston, Idaho, unlawfully and knowingly "transport * * * a certain woman, to wit, one Aileen Leatham Swift, in interstate commerce from the city of Preston, in the state and district of Idaho, to Lewiston, Cache County, in the state and northern division of the district of Utah, * * * for the purpose of concubinage, debauchery and other immoral purposes."

The appellant on being arraigned did not demur to the indictment but entered a plea of not guilty. At the trial, before any evidence was introduced, he objected to the taking of evidence because the indictment did not state a public offense. At the conclusion of the trial he moved for a directed verdict in his favor on the same ground and because there was no evidence of criminal intent in the transportation of the woman. The motion was overruled, and an exception was saved to the ruling.

The court charged the jury as follows:

"In this case it is charged that the defendant transported this girl, Aileen Swift, from Preston, in the state of Idaho, to Lewiston, in the state of Utah, for the purpose of having sexual intercourse with her. * * *

"If you are satisfied beyond a reasonable doubt that such a purpose and intent was formed in the state of Idaho and the transportation of the girl from Idaho to Utah was for that purpose, then he would be guilty under the indictment in this case. If you have a reasonable doubt about that it would be your duty to find him not guilty."

PHILLIPS, Circuit Judge, dissenting in part.

There were other matters in the charge, but none which submitted the case on any other theory. The appellant tendered certain written instructions, and excepted to their refusal. But when such exceptions were not permitted, he formally excepted to "the failure of the court to instruct as to the definition of the words 'concubinage' and 'debauchery' and to give the request that the jury should disregard the portion of the indictment which refers to other immoral purposes, that the language is too indefinite and therefore cannot constitute a sufficient basis for any valid indictment."

The jury found appellant guilty. Thereafter, and before sentence, he moved for a new trial on the grounds that the evidence was insufficient to sustain the verdict, the court erred in refusing to direct a verdict in appellant's favor for that reason, and there were errors in the charge to the jury. He also moved to arrest the judgment, because the indictment was insufficient and the conviction was of an offense for which he was not indicted. The motion was overruled and the appellant excepted. He was sentenced to a term of four years.

It is assigned there was error in the proceedings, as follows: The overruling of the objection to the introduction of evidence; the refusal to direct an acquittal; the evidence was insufficient to warrant a conviction; the refusal to give requested instructions to the jury; the overruling of the motion in arrest of judgment; the defendant was tried for and convicted of an offense not charged.

An attack upon an indictment by objecting to the introduction of evidence is not recognized in the federal courts. Wild v. United States (C. C. A.) 291 F. 334. An indictment may be properly tested by a motion in arrest of judgment, for defects apparent on the face of the record. I Bishop, Crim. Proc. (4th Ed.) § 1285. The motion raises the objection that some substantial element of the crime is omitted, but none with respect to the form of stating it. Dunbar v. United States, 156 U. S. 185, 15 S. Ct. 325, 39 L. Ed. 390.

The indictment in this case charged an offense, because it alleged concubinage as a purpose of the transportation. The indictment is based on that portion of the Act of June 25, 1910, which punishes a transportation "for the purpose of prostitution or debauchery, or for any other immoral purpose." 36 Stat. 825 (18 USCA §§ 397–404). Concubinage is a sufficiently defined purpose, as it has a single clear meaning and is a kind

of sexual immorality contemplated by the statute. Athanasaw v. United States, 227 U. S. 326, 33 S. Ct. 285, 57 L. Ed. 528, Ann. Cas. 1913E, 911. It signifies cohabitation of a man and woman not legally married.

But the averments of "debauchery and other immoral purposes" are insufficient, as they do not measure up to the standard set in Evans v. United States, 153 U. S. 584, 14 S. Ct. 934, 936, 38 L. Ed. 830, that a crime must be charged with precision and certainty, and the words of a statute do not suffice unless they "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense." Words of general description in a statute may be properly used, but should be accompanied by a specific statement of facts within them. United States v. Hess, 124 U. S. 483, 8 S. Ct. 571, 31 L. Ed. 516; United States v. Pond, 27 Fed. Cas. 590, No. 16067. Debauchery has different meanings, some of them being foreign to the statute; for example, gluttony and intemperance. See Webster's and Century Dictionaries; Suslak v. United States (C. C. A.) 213 F. 913. As was held in the Athanasaw Case, the White Slave Act refers to that phase of debauchery consisting of "sexual actions." Consequently, an indictment for violation of that act should specify the character of debauchery. Likewise, it should particularize the general words "other immoral purposes."

The question of the needful description of an offense in an indictment was involved in Lynch v. United States (C. C. A.) 10 F.(2d) 947, where it was decided that an indictment was insufficient in not specifying where in a given county the defendant possessed liquors. A more definite averment was held requisite to enable defendant to prepare his defense and to plead a conviction in a later prosecution. The rule was relaxed in Myers v. United States (C. C. A.) 15 F.(2d) 977, but the practice of loose pleading was disapproved. This court has followed the former case. Skelley v. United States (C. C. A.) 37 F. (2d) 503. However, by the test of either, the indictment in this case must be held insufficient in its averment of "debauchery and other immoral purposes."

I hesitate somewhat in expressing this view because of the opinions in Athanasaw v. United States, supra, and Ammerman v. United States (C. C. A.) 262 F. 124. In the former, the charge was more elaborate, but the sufficiency of the indictment was not discussed or reviewed. In the Ammerman Case, a charge of transportation for the purpose of

debauchery was found sufficient, but there was no discussion of the point and no authorities were cited. An enlightening case is Blain v. United States (C. C. A.) 22 F.(2d) 393, where the indictment was held to be sufficient, because it specified that debauchery consisted of unlawful sexual intercourse, which was within the meaning of that word. Certainly, the charge in this case should have set forth the kind of debauchery meant to be proved.

But as already noted, the indictment is sufficient in this case solely because it charges a purpose of the transportation was concubinage. If that element had been omitted, the indictment could not have been sustained. There was absolutely no offer to prove it and no claim the appellant ever contemplated such relation with the woman. It was wholly excluded by the evidence, which was limited to one or two acts of sexual intercourse, and accordingly the charge of the court submitted only that purpose to the jury. The insertion of the word "concubinage" was without any possible excuse or warrant. Stripped of this, as it should be, the indictment is wanting in an essential specification of the offense. Otherwise, the motion in arrest of judgment reached the defect in the indictment, as it was one of substance and not of form.

For this reason, the government was not justified in subjecting appellant to trial upon proofs of a concrete offense under this indictment. He was entitled to be put in the position in which he would have been had the word "concubinage" not been inserted. In that case, the indictment would not have withstood the motion to arrest the judgment.

I agree that the judgment must be reversed and a new trial directed for the reasons stated in the opinion of Judge McDERMOTT; and it is so ordered. But I think it is unnecessary to rest our decision on those grounds. In my opinion, a new and more definite indictment is indispensable, and, if such indictment shall not be returned in due course, the defendant ought to be discharged without day.

Reversed.

McDERMOTT, Circuit Judge (concurring in the judgment of reversal).

■ The first offense charged is concubinage. There is not a syllable of evidence to support the charge, and the district attorney concedes that "that word was merely surplusage and should not be considered." The phrase "other immoral purposes" adds nothing to the indictment. Instead of charging sexual intercourse—one of innumerable immoral purposes—which he expected to prove, he charged "debauchery," a word of several meanings, some of which are not criminal; its sexual meaning is twofold—excessive indulgence which was not proved, and seduction from virtue which must be gathered from circumstances; nor did he specify which of these two sexual meanings he expected to prove. Nevertheless, the practice of awaiting the outcome of the trial before attacking an indictment for lack of particularity of statement cannot be countenanced. There is a time for all things, and the practice affords the defendant ample opportunity before trial to require a better statement of the offense charged. After verdict, the question is not of form; the question is, Does the indictment state a public offense? I incline to the opinion that a charge of an interstate transportation for the purpose of debauchery states a public offense.

■ I think there were two trial errors. There are two elements of the offense charged—(a) transportation and (b) unlawful purpose. The plea of not guilty put both elements in issue. Both were for the jury. The defendant did not take the stand; he did not admit the transportation; by his plea, he denied it, just as his plea put in issue the unlawful purpose. The trial court charged the jury that "there is not any doubt in this case" that the defendant made the interstate trip with the girl, and left to the jury the question of the purpose of the trip. In Bogileno v. United States (C. C. A. 10) 38 F.(2d) 584, the defendant was charged with bribing prohibition agents; the defendant took the stand, admitted he gave the agents $400 in currency immediately after his arrest. The defense was that he sought to entrap the agents. The court submitted to the jury the question of his intent—the only issue tendered by the evidence. The trial court said, "As I see it there is very little dispute in the evidence. He admits he gave the money for the purpose of bribery." Defendant's evidence was that the money was paid to entrap the agents into the offense of accepting a bribe. There could be no entrapment unless the payment was a bribe. There was no exception to the charge, but this court reversed the judgment because the trial court had invaded the province of the jury. To my mind, the present case is stronger than the Bogileno Case; there, the defendant admitted the payment; here, the defendant admitted nothing. I am not disposed to curtail the wholesome power of the trial court to comment upon the

evidence; but I think the issues framed should be left to the jury.

■ The district attorney asked the prosecuting witness the following question: "During that time about which you have testified, did you know that Mr. King was not a medical doctor?" This was objected to as "incompetent, irrelevant and immaterial"; the objection was overruled and an exception saved. If the prosecution's theory was that the defendant gained the confidence of the girl by representing that he was a medical doctor, when in fact he was not, proof of such facts might have been material. But there was no attempt to prove that he was not a medical doctor, nor any direct evidence that he represented he was. Lacking such proof, her knowledge was immaterial and incompetent. It may have been better form to object on the further ground that "the question assumes facts not proven"; but, where the liberty of a citizen is involved, technical nicety is not required. Bogileno v. United States (C. C. A. 10) 38 F.(2d) 584.

■ We are admonished by section 269 of the Judicial Code (28 USCA § 391) to disregard technical defects "which do not affect the substantial rights of the parties." This statute has particular force, as many courts have said, when the evidence of guilt is clear and convincing. Tingley v. United States (C. C. A. 10) 34 F.(2d) 1. While the question of fact was for the jury, I do not feel that the evidence of guilt is so clear and convincing as to require that trial errors be overlooked. If the guilt of the defendant was clear, I might feel differently about these errors.

I pass by what seems to me to be certain improbabilities inherent in the evidence of the government, and mention but one circumstance. The theory of the prosecution was that the complaining witness contracted gonorrhea from the defendant. The defense was that it was impossible for her to have contracted gonorrhea from the defendant because he was not so infected. Shortly after his arrest, and while in jail, the defendant was physically examined by Dr. George Myler, a government physician, who found that he did not have gonorrhea at the time of the transportation. If this evidence is true, the theory of the prosecution falls. Another doctor testified that the wife of the defendant did not have gonorrhea, which has a strong evidentiary bearing upon the defendant's physical condition. Inexperienced defense counsel, appointed to defend, submitted the case on stipulations that defense witnesses, if

called, would testify to such facts. To rebut this stipulation, the government called another doctor who testified that the presence of gonorrhea might not be detected upon one examination. He was testifying as to the complaining witness, a female. It does not follow that there is like difficulty in detecting gonorrhea in a male. The extent of the examination which Dr. Myler made, and the probability of its being conclusive was a subject that should have been thoroughly explored.

I think there should be another trial; at such trial, I hope the district attorney will see to it that the question of the extent of the examination of Dr. Myler, and its conclusiveness, is fully explored.

I therefore concur in the judgment of reversal, and the direction to grant appellant a new trial.

PHILLIPS, Circuit Judge (dissenting in part).

Section 398, title 18 USCA, in part provides:

"Any person who shall knowingly transport * * * in interstate * * * commerce * * * any woman or girl for the purpose of * * * debauchery * * * shall be deemed guilty of a felony."

King was convicted of a violation thereof.

The offense consists of two elements: (a) The transportation in interstate commerce, and (b) "for the purpose of debauchery."

The sufficiency of the indictment was not challenged before verdict. It charged the offense in substantially the language of the statute. It is true that the word "debauchery" has more than one meaning. As used in the statute it means sexual immorality, or acts which will naturally and inevitably lead thereto. Van Pelt v. United States (C. C. A. 4) 240 F. 346, 348; Athanasaw v. United States, 227 U. S. 326, 331, 33 S. Ct. 285, 57 L. Ed. 528, Ann. Cas. 1913E, 911; Burgess v. United States, 54 App. D. C. 71, 294 F. 1002.

An indictment which charges the offense in the language of the statute is sufficient in substance and is not open to attack after verdict on the ground that it is not sufficiently specific. Montoya v. United States (C. C. A. 8) 262 F. 759.

While a defendant who waits until after verdict to question the sufficiency of an indictment does not waive the objection that some essential element of the crime is omitted, he does waive all objections which run

to the mere form in which the various elements of the offense are stated. Dunbar v. United States, 156 U. S. 185, 191, 192, 15 S. Ct. 325, 39 L. Ed. 390; Musey v. United States (C. C. A. 5) 37 F.(2d) 673. See also Wilson v. United States (C. C. A. 2) 275 F. 307, 311; Nudelman v. United States (C. C. A. 9) 264 F. 942; Wild v. United States (C. C. A. 8) 291 F. 334, 335, 336; Clement v. United States (C. C. A. 8) 149 F. 305, 313.

The indictment alleged both elements of the offense, but failed to allege one element, to wit, the purpose of the transportation, with sufficient particularity. The objection therefore is not that an element was omitted, but it runs to the form in which the element was stated. It is my opinion that such defect was cured by the verdict.

There is no doubt that King correctly understood the meaning of the word "debauchery" as used in the indictment, because he requested the court to charge the jury as follows:

"Debauchery, within the meaning of the statute above referred to, is correctly defined as sexual immorality. If a person should transport a woman from one state to another for the purpose of having the woman indulge in illicit sexual intercourse, then the person so transporting such a woman with such a purpose can be said to have transported her for purposes of debauchery. This is the meaning of the word 'debauchery' as it is used in the federal statute."

For the above reasons I respectfully dissent from Judge COTTERAL'S opinion and concur in that portion of Judge McDERMOTT'S opinion which deals with the sufficiency of the indictment after verdict.

Aileen Swift testified to the following facts. She resided with her parents at Preston, Idaho. She was 18 years of age. She first met King when he came to her home on Thursday, October 2, 1930, about six o'clock in the evening. Her mother and her nine year old brother were present. King showed them a machine called an "electrode," told them it would cure her mother's illness, cited cases he had cured, and offered to sell it for $26. Miss Swift said she wanted her mother to have the machine but could not buy it without seeing her father, that she would go to her father's office and if he was there they would buy the machine. King offered to take her in his car. She and her brother went with King to her father's office but her father had not returned from Logan. They started back to her home and King said "for two pins" he would drive down to Logan and see

if they could find her father. She said she did not know whether they could find her father, but she would like to take a chance. King said it would be a good ride for her and her brother. They then went to her home, and she told her mother she and her brother were going with King to Logan to try and find her father. The mother protested, but Miss Swift was so intent on getting the machine for her mother that she said she would go anyway.

They left Preston in King's automobile about seven thirty o'clock in the evening. It was then dark. King and she occupied the front seat and her brother the back seat.

As they drove along they talked about her mother's illness. King, with her consent, demonstrated the use of the "electrode." He pretended to discover that Miss Swift was suffering from leucorrhea and told her if it was not cured she would not be able to bear children. King said, "I wish we could get rid of your little brother so that I could show you." He left her little brother at a drug store in Lewiston, Utah, took Miss Swift out on a lonely road and under the guise of an examination for the purpose of determining a proper treatment for the disease took advantage of and seduced her.

They then returned to the drug store, got her brother and started toward Logan. They had not proceeded very far when they met her father's car. They then turned around and followed her father's car back to her home at Preston.

It is four miles from Preston to the Idaho-Utah state line. King commenced his intimacy with Miss Swift before they reached such state line.

Miss Swift was then asked, "During the time about which you have testified, did you know that Mr. King was not a medical doctor?" This was objected to on the ground that it was "incompetent, irrelevant and immaterial." The objection was overruled, and Miss Swift answered in the negative.

On Saturday night, October 11, Miss Swift went with her sweetheart, Bill Barker, to a dance at Logan. She became ill and he took her home. She was suffering from a burning sensation in her privates. Dr. Eugene Worley was called, and he made an examination. Dr. Worley testified that he examined Miss Swift on October 11, 1930, and found her suffering with acute gonorrhea of short standing. He further testified that he had examined many patients for gonococcus germs, that it might take several examinations to detect evidence of gonorrhea,

and that the fact that no gonococcus germs are found is not conclusive evidence that gonorrhea does not exist.

King did not testify in his own behalf. The defense consisted of stipulations as to facts that certain witnesses would testify to if present, as follows:

That Dr. George Myler, a government physician at Cheyenne, Wyoming, "examined the defendant (King) on the 28th day of October and found that he had not had gonorrhea in the past six months."

That Dr. Edward Lauzier, a physician of Rock Springs, Wyoming, made an examination of King's wife and found she was not afflicted with gonorrhea.

That L. Martin, sheriff of Sweetwater County, Wyoming, and J. Kahn, a merchant, both residents of Rock Springs, Wyoming, King's home, knew King's reputation in that community and that it was good.

The fact that a medical examination of King did not disclose gonorrhea infection does not impress me as being decisive. We do not know the extent or character of such examination. Unless a smear of secretion from the prostate gland was taken and subjected to a miscroscopic examination, a chronic gonorrhea infection might not be discovered on one examination. In an inactive chronic case of long standing, it is often impossible to detect the germ, although it is present. Likewise the fact that the examination of King's wife did not disclose that she had gonorrhea is not conclusive that King did not infect Miss Swift. Here again, we do not know the extent or character of the examination. The disease is often difficult to detect in a female. Furthermore, gonorrhea infection is not always common to both husband and wife.

It is argued that Miss Swift accused King in order to protect Barker. This is not based on any evidence, is wholly conjectural and is improbable. If Barker infected Miss Swift with this dreadful social disease, her natural feeling toward him would be one of hatred and resentment, rather than friendliness and a desire to protect him. Likewise, it would be unnatural for her to accuse an innocent old man with a serious offense, for the conviction of which he would suffer severe punishment.

Complaint is made that Miss Swift testified equivocally, "I guess he had intercourse with me." For a young woman to testify at a trial before a jury of men and a curious court room audience as to the details of her seduction and to a fact that she had been infected with a loathsome social disease was no idle ceremony. Her diffidence and uncertain answer had more earmarks of truth than would a brazenly related and unequivocal statement of the details.

It is contended that King would not have invited Miss Swift's little brother to accompany them, if he had had improper designs toward her. The brother was only nine years of age, the journey was after dark, and King arranged to leave the brother at a drug store for a sufficient length of time to permit him to accomplish his evil purpose. I see little force in this argument.

If Miss Swift's testimony was true, it established every element of the offense charged and fully warranted the verdict of guilty.

Unfortunately we have not been able to devise a means for determining issues of fact with absolute certainty. The common law petit jury, which Blackstone characterized as the "glory of the English law," is the best instrumentality yet instituted for the determination of controverted issues of fact. The verdict of a jury is the unanimous opinion of twelve men coming from different walks of life, and with varied experiences. Their composite judgment on an issue of fact is usually right. My experience at the bar and on the nisi prius bench has confirmed my belief in the efficacy of the jury system. The jurors in this case heard Miss Swift testify, they observed her demeanor on the stand, and they believed her story. It is not for us to say that it was not true.

In its charge to the jury, the court in part said:

"There are three elements going to make up this offense charged in the indictment.

"First that the defendant King transported this woman, Aileen Swift; that he transported her from Preston, Idaho, to Lewiston, Utah; that he did it for the purpose, that is with the intent to have sexual intercourse with her. There is not any doubt in this case, so far as the evidence is concerned, that on this occasion, that is on the 2nd day of October of this year, the girl rode with defendant King from Preston, Idaho, to Lewiston in his automobile.

"There is not any dispute about what Preston is in the State of Idaho and Lewiston is in the State of Utah."

There were no exceptions to the charge.

It is contended that the court erroneously took from the jury the issue of transportation, and that the case falls within the prin-

ciples announced in Bogileno v. United States (C. C. A. 10) 38 F.(2d) 584, 587.

The indictment in the Bogileno Case charged a violation of section 91, title 18, US CA, which makes it unlawful for a person to "give * * * any money * * * to any officer of the United States, * * * with intent * * * to induce him to do or omit to do any act in violation of his lawful duty."

Bogileno had been arrested by two prohibition officers. He gave them $400 in currency. The indictment charged that he gave this money for the purpose of causing them to release him and to refrain from appearing against him on a charge of violating the National Prohibition law then pending before a United States Commissioner. Bogileno testified that the prohibition agents asked him for money and that he gave them money so he could have them arrested. In its charge to the jury, the court said:

"The question is that this defendant, having been arrested and in the custody of the government—whether he offered this bribe to induce them to drop the charges or not to appear as witnesses against him. The evidence on that point is that he gave the officers, after a discussion with them, $400. He admits he gave them money. He admits he gave it for that purpose, so there can hardly be a dispute about that fact. * * *

"In this case as I see it there is very little dispute in the evidence. He admits he gave the money, and gave the money for the purpose of bribery."

Bogileno did not admit he gave the money for "that purpose." He denied such was his purpose. In the opinion in the Bogileno Case, this court said:

"The instructions were brief, covering less than two pages, and we cannot believe that these two excerpts failed to impress the jury. In substance, they seem to us to be equivalent to an instruction to find the defendant guilty, which is beyond the right and authority of the court to do. It was the exclusive duty of the jury to determine whether he gave the $400 to induce the agents to drop the charges or not to appear as witnesses against him. He did not admit that he gave it for that purpose, or for the purpose of bribery. He testified that he gave it for another purpose."

In the Bogileno Case the instructions misquoted the evidence of the defendant, took from the jury the only issue in the case, and in effect instructed the jury to find the defendant guilty. On the other hand, in the instant case, the instructions conformed to the undisputed evidence and referred to an element of the offense against which no defense was interposed. If King and Miss Swift did not make the journey to which she testified, her story was wholly fabricated. If they did not make such journey, surely the defense would have attempted to controvert that portion of her testimony. I think, under the circumstances, the statement of the court was a legitimate and justifiable comment on the evidence, and well within the province of the trial judge.

It is also contended that the court erred in overruling the objection to the question asked Miss Swift whether she knew King was not a medical doctor. The objection was that the evidence was incompetent, irrelevant and immaterial. If Miss Swift's story is true, King held himself out to her as being able to diagnose and treat disease. He thereby gained her confidence and placed her in an attitude where he could seduce her. If he was not a doctor, and she knew it, her story was less probable. The evidence was material. The only objection that could have been properly urged was that the question assumed facts not proven. Since this objection was not interposed, I do not think the error should be noticed here.

For the foregoing reasons I respectfully dissent from the concurring opinion of Judge McDERMOTT, except as to that portion which deals with the sufficiency of the indictment after verdict.