**MILLER et al. v. UNITED STATES.**

No. 2222.

Circuit Court of Appeals, Tenth Circuit.

June 12, 1941.

Glenn Porter, of Wichita, Kan. (Getto McDonald, Dwight S. Wallace, and William Tinker, all of Wichita, Kan., on the brief), for appellants.

A. W. W. Woodcock, of Salisbury, Md. (Summerfield S. Alexander, U. S. Atty.,

of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

U. R. Miller, T. C. Miller and Charles Miller were charged in the District Court of the United States for the District of Kansas with violating Sections 88 and 338, 18 U.S.C.A. The indictment contained eleven counts. The first ten counts charged the formation of a scheme to defraud by use of the mails, in violation of 18 U.S.C.A. § 338. The eleventh count charged a conspiracy to defraud by use of the mails in furtherance thereof, in violation of 18 U.S.C.A. § 88. They were found guilty and sentence was imposed, from which they have appealed.

The transactions out of which the prosecution arose resulted from a copper mining venture in Arizona, and extended over a long number of years. The mining company involved was known as the Keystone Copper Mining Company. The defendants were the principal stockholders and were officers in the corporation. In general, the indictment charged that they used the mails to defraud by making inflated and fictitious valuations of the property and by misrepresenting the mining operations that had been carried on, in order to sell stock and procure loans of money which they converted to themselves; that they engaged in fraudulent stock gambling operations on the Chicago Stock Exchange, through which large sums of money were dissipated; that by various fraudulent schemes they attempted to freeze out many of the stockholders, to their own ultimate benefit.

One of the unlawful acts charged is that they made a false and fraudulent application to the Blue Sky Board of Kansas for the purpose of obtaining permission to sell $25,000 of collateralized notes. The application to the Blue Sky Board was signed and verified by U. R. Miller, president, and C. W. Miller, secretary. It contained a statement of the number of shares of stock held by various stockholders and the actual cash they had invested in the company. Insofar as material herein, the statements concerning the amount of cash invested by various stockholders were as follows:

| | |
|---|---|
| T. C. Miller | $40,000 |
| U. R. Miller | 60,000 |
| C. W. Miller | 10,000 |

Across the face of the application appeared the following, written in long-hand: "Approx. Amt. Extended over 20 years time." This writing was placed on the application by John W. Blood, an attorney and director in the company, prior to the time it was signed and verified.

C. W. Miller testified that there was a discussion by those present at the time the application to the Blue Sky Board was prepared as to what was meant by the statement in the application that he had invested $10,000 cash in the company; that this discussion preceded his signature on the application. He was asked to state what was said in that discussion as to the meaning of this statement in the application. An objection was sustained and he was not permitted to answer.

Intent is an essential element of fraud. 23 Am. Jurisprudence, p. 773; Yusem v. United States, 3 Cir., 8 F.2d 6; Smith v. Bridgeport Machine Co., 151 Kan. 444, 100 P.2d 65. Whenever the belief of a person or the motive of his act or conduct is material, he may not only directly testify that he had no intent to defraud, but he may buttress such statement with testimony of relevant circumstances, including conversations had with third persons or statements made by them, tending to support his statement that he had no intent to defraud. Buchanan v. United States, 8 Cir., 233 F. 257; Gardom v. Woodward, 44 Kan. 758, 25 P. 199, 21 Am.St.Rep. 310; Potter v. United States, 155 U.S. 438, 15 S.Ct. 144, 39 L.Ed. 214; Hyde v. United States, 4 Cir., 15 F.2d 816; Sparks v. United States, 6 Cir., 241 F. 777.

One of the grave charges lodged against the defendants was that they falsely and fraudulently stated in writing that they had themselves actually invested cash in the company in the sum of $110,000, when in fact they had invested no cash at all. In their attempt to refute the charge of fraud, they were not limited to a denial of intent to defraud. It was proper for them, especially in view of the statement written in long-hand across this part of the application, to state what was meant by these statements. Conversations had between the parties and statements made by the attorney who prepared the application, tending to show their understanding of the transaction and thus negativing any intent to defraud, were competent. A jury would be more inclined to give weight and con-

sideration to statements and conversations upon which a conclusion was based than to a mere statement by the accused of his conclusion, unsupported by such statements.

The indictment further charged that the defendants fraudulently stated in the application to the Blue Sky Board that the only liens and mortgages against the property consisted of a judgment of $2,400, on which $1,000 had been paid, whereas the defendants well knew that there were at all times other judgments in force and effect which they themselves held against the company. Defendant U. R. (Bert) Miller testified that these judgments had been released prior to the execution of the application to the Blue Sky Board by written instrument which had been executed by the defendants holding the judgments, and that the release had been delivered to the company. The written release was introduced in evidence and reads as follows:

"Dec. 10th, 1935.

"This is to certify that to raise money Mrs. W. W. Miller, U. R. Miller, T. C. Miller, agrees to relinquish all their prior rights on notes or judgments held by them, in favor of any money raised by mortgages otherwise for the purpose of putting this mine and mill in operation. These judgments were not put on the Keystone for execution purpose but to protect the property and themselves.

"Signed by Mrs. W. W. Miller,
"T. C. Miller,
"U. R. Miller."

Defendant offered to prove by John W. Blood, a director and attorney of the company, that the release was prepared at his instance and request and was delivered to the directors of the company at a meeting at which he was present. An objection was sustained to this testimony on the ground that it was hearsay and that the instrument was not a valid release. Whether the Board of Directors received this release is a question of fact. The execution and delivery of the release had a vital bearing on the charge that defendants intended fraud when they omitted any mention of these judgments in the application to the Blue Sky Board. Defendants were permitted the testimony of Bert Miller that the release was executed and delivered. They were permitted to introduce the release, but they were denied the corroborating testimony of Mr. Blood, a director and attorney for the corporation, that the company actually received the release. It might well be that the jury doubted the testimony of the witness that the release was delivered to the company. Had Mr. Blood been permitted to testify that the company actually received and had the release, they might have viewed the transaction in a different light in considering the motive or intent of the defendants.

The defendants introduced a number of substantial witnesses, men prominent and influential in their community, who testified to the good reputation of the defendants in the community in which they resided. Defendant Charles Miller submitted three requests for instructions relative to the weight to be accorded character testimony. These requests were denied by the trial court. No request for such an instruction was made by the remaining defendants. The court instructed the jury that: "Evidence has been introduced to show the good character of the defendants. Evidence of a defendant's good character or previous good character is competent evidence in favor of the party accused as tending to show that he would not be likely to commit the crime charged against him, and in this case, if the jury believe from the evidence that prior to the commission of the crime, the defendants or any of them had always borne a good character or reputation for being law-abiding among his acquaintances in the neighborhood in which he lives, *this then is a fact proper to be considered by the jury with all of the other evidence in the case in determining the question whether or not the witness who testified to the facts tending to incriminate him might have been mistaken or testified falsely or truthfully,* and if after careful consideration of all the evidence in the case, including that bearing upon the defendant's previous good character, the jury entertain a reasonable doubt of the defendant's guilt, then it is your duty to acquit; but if after considering all the evidence including that of the previous good character, you believe beyond a reasonable doubt that the defendant or defendants committed the crime, it is equally your sworn duty to convict." (Italics supplied).

Error is predicated on this instruction. The government contends that when read in its entirety it correctly states the law. We cannot agree. The instruction is drawn too narrowly. It does not tell the

972

jury that character testimony may be such that it alone may create a reasonable doubt, although without it the other evidence would be convincing. Edgington v. United States, 164 U.S. 361, 366, 17 S.Ct. 72, 41 L.Ed. 467. The instruction in one part told the jury that if, after a consideration of all the evidence, including that of good character, the jury entertained a reasonable doubt, then they should acquit. However, in another part of the instruction it limited the consideration of the character testimony to a determination whether the prosecuting witnesses committed perjury or were mistaken. From a reading of the whole instruction the jury may have concluded that if they believed from all of the evidence, including that of previous good character which was offered only to show that the witnesses testifying for the prosecution were mistaken or testified falsely, then they should acquit. This clearly would be erroneous. It is not sufficient that an instruction be so drawn that a jury may reach the right conclusion, but it is required that it be so framed that a jury may not draw the wrong conclusion therefrom.

■ ■ Two of the defendants requested no instruction on character testimony, and none of them excepted to the instruction given by the court. Their failure in this respect does not, however, preclude us from examining the instruction. Where life or liberty is involved, an appellate court may notice and correct a serious error plainly prejudicial, without it being called to the attention of the trial court, Troutman v. United States, 10 Cir., 100 F.2d 628, 634, or even where the error was not preserved for review by proper objection, exception or assignment, Strader v. United States, 10 Cir., 72 F.2d 589, 593; Williams v. United States, 10 Cir., 66 F.2d 868; Bogileno v. United States, 10 Cir., 38 F.2d 584; Kelly v. United States, 10 Cir., 76 F.2d 847.

■ In a criminal case, it is the duty of a court to instruct on all essential questions of law, whether requested or not. Kinard v. United States, 68 App.D.C. 250, 96 F.2d 522, 523; Kreiner v. United States, 2 Cir., 11 F.2d 722, 731. Some courts have held that failure to instruct on the consideration to be accorded to character testimony in the absence of a request for such an instruction is not reversible error. Kinard v. United States, supra. It may be conceded that the court was not bound to instruct on character testimony in the absence of a request for such an instruction, but when it did proceed to instruct the jury thereon, it was required to give a correct instruction. It could not mislead the jury by an instruction which was erroneous. Misleading the jury in regard to the purpose for which they should consider character evidence adversely affected the substantial rights of the defendants.

■ C. A. Rasor, a mining engineer, was permitted to testify over objections by defendants that in his opinion the Keystone Copper Mining Company mill was not a modern flotation mill. He first saw the mill in 1940. The purpose of this testimony is not apparent. There is no charge or testimony that the defendants represented at any time to anyone that the mill was a modern flotation mill. The government indicates in its brief that the purpose of this testimony was to establish an advanced stage of obsolescence. If advanced obsolescence was within the issues as framed by the indictment, it could not be established by testimony that the mill was not a modern flotation mill. Furthermore, the alleged false representations as to the condition of the mill were made, if at all, more than four years preceding the time when the witness first saw the mill. During that period the mill had not been operated. It had stood idle all the time. The witness' testimony as to the condition of the mill in 1940, when he first saw it, was incompetent to establish its condition more than four years prior to that time.

■ Complaint is made of the court's instruction on circumstantial evidence. The challenged instruction is as follows:

"Now, there are certain circumstances in connection with this case, in connection with the direct evidence, and so I tell you that there are two kinds of evidence, direct and circumstantial evidence. Direct evidence is when a witness testifies directly of his own knowledge of the main fact or facts to be proven. Circumstantial evidence consists of proof of certain facts and circumstances from which the jury may infer other and connected facts which usually and reasonably follow according to the common experience of mankind.

"Circumstantial evidence is legal evidence the same as direct evidence. There is this distinction between direct and circumstantial evidence. Direct or positive evidence arises where a witness may be

called to prove the precise fact which is the subject of inquiry.

"Circumstantial evidence may be of such nature as to warrant a conclusive belief that some one did the act and it would be injurious to the best interests of society if such proof could not be considered. If it were necessary always to have positive evidence, many crimes committed, which destroy the peace and security of society, would go entirely unpunished. There may be circumstantial evidence quite as strong, indeed sometimes considerably stronger than positive evidence. The attempt to compare one of these means of proof with the other is not based upon sound elements of comparison, because there is no common medium by which they can be compared. Each has its own advantages and disadvantages, and it is necessary to understand them both.

"*I think that does not apply here,* but if a case depends on circumstantial evidence alone, all the facts and circumstances taken together must be inconsistent with any other reasonable hypothesis except that of guilt." (Italics ours.)

What does the court mean by the phrase, "*I think that does not apply here*"? It must have been inserted for some purpose. Does it mean that circumstantial evidence may be as strong as or stronger than positive evidence, but not here? Or that each class of evidence has its own advantages or disadvantages, but that that does not apply here? We cannot tell what it means. Evidently counsel for the government are unable to interpret its meaning. The only explanation attempted in the government's brief is the statement that: "The instruction clearly was not prejudicial. It is a correct statement of law." If the industry, ingenuity and ability of eminent counsel for the government are unable to explain the meaning of this statement, how do we know that it correctly states the law? How could the jury have been guided intelligently in its consideration of circumstantial evidence by this instruction?

The errors we have discussed are substantial and go to the fundamental elements of the trial. In Crawford v. United States, 212 U.S. 183, 203, 29 S.Ct. 260, 267, 53 L.Ed. 465, 15 Ann.Cas. 392, the Supreme Court said: "There is a presumption of harm arising from the existence of an error committed by a trial court against the party complaining, in excluding material evidence on a trial, especially before a jury. It is only in cases where the absence of harm is clearly shown from the record that the commission of such an error against a party seeking to review it is not cause for the reversal of the judgment."

In Little v. United States, 10 Cir., 73 F. 2d 861, 866, 96 A.L.R. 889, this court said: "But where error occurs which, within the range of a reasonable possibility, may have affected the verdict of a jury, appellant is not required to explore the minds of the jurors in an effort to prove that it did in fact influence their verdict."

Measured by these tests, our conclusion is that error was committed which requires a reversal. Here the evidence of guilt was in a considerable measure circumstantial. The evidence did not overwhelmingly establish the guilt of the defendants. From an examination of the whole record it cannot be said that the absence of harm clearly appears from these errors.

The bars which guard the right to a fair trial, such as is guaranteed by our Constitution, include court procedure, rules of evidence and proper instructions to the jury. These bars must not be lowered. To do so is to strike at the very foundation of our system of jurisprudence which has for its ultimate goal the preservation and protection of the liberty and freedom of the individual citizen.

Reversed and remanded.